**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---

**UNITED STATES OF AMERICA,**

Plaintiff,

-v-

**CASE NO: 17-CR-313 GAG**

**JUAN BATISTA JOHNSON-DEBEL,**
**NOEL DE LEON-DE LA ROSA,**

Defendants.

**June 14, 2019**
**Friday - 10:00 a.m.**
**(Pages 1 - 125)**

---

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**
**HELD BEFORE THE HONORABLE CHIEF JUDGE GUSTAVO A. GELPI**
**JOSE V. TOLEDO U.S. COURTHOUSE, OLD SAN JUAN, PUERTO RICO**

---

**APPEARANCES:**

**For the United States of America:**

Assistant U.S. Attorney David Thomas Henrek

Senior Litigant Counsel Jose A. Ruiz-Santiago

**For Defendant (1) Juan Batista Johnson-Debel:**

Attorney Miguel Oppenheimer

**For Defendant (2) Noel De Leon-De La Rosa:**

Attorney Fernando Omar Zambrana-Aviles

**ALSO PRESENT:**

Sonia C. Cardona, Courtroom Deputy Clerk
Ani Navarro/Sylvia Zetterstrand, Court Interpreters
Elvis Medina, HSI Special Agent
Jhon Coleman, HSI Special Agent

# I N D E X


| **GOVERNMENT WITNESS** | **PAGE** |
|---|---|
| ***SONIA ORTIZ*** | |
| Direct-Examination by Mr. Henek | 3 |
| Cross-Examination by Mr. Zambrana-Aviles | 18 |
| Cross-Examination by Mr. Oppenheimer | 21 |
| Redirect-Examination by Mr. Henek | 22 |
| **DEFENSE WITNESSES** | |
| ***MATTHEW TOMMIE*** | |
| Direct-Examination by Mr. Oppenheimer | 28 |
| Cross-Examination by Mr. Henek | 49 |
| Redirect-Examination by Mr. Oppenheimer | 53 |
| Redirect-Examination by Mr. Zambrana-Aviles | 55 |
| ***HENRY CUERVO*** | |
| Direct-Examination by Mr. Oppenheimer | 61 |
| Voir Dire by Mr. Ruiz-Santiago | 71 |

**EXHIBITS IN EVIDENCE**

| | |
|---|---|
| Government Exhibit 25, 25A | 9 |
| Defendants' Exhibit 2 | 33 |
| Defendants' Exhibit 3 | 40 |

P-R-O-C-E-E-D-I-N-G-S

**COURTROOM DEPUTY:** All rise. The United States District Court is now in session. The Honorable Chief Judge Gustavo A. Gelpi presiding. God save the United States of America and this Honorable Court.

**THE COURT:** You may be seated. For the record, we are here on criminal case number 17-CR-313, The United States of America versus Juan Batista Johnson-debel and Noel De Leon-de La Rosa. Counsel is present in court, good morning. Both gentlemen are here. The courtroom is open to the public. The Jury is here, so we will now continue the proceedings.

Mr. Henek, I understand that you have one last witness, so please go ahead and call her to the stand.

**MR. HENEK:** Your Honor, the United States calls Sonia Ortiz to the stand.

**THE COURT:** Okay.

**COURTROOM DEPUTY:** Please raise your right hand. Do you solemnly swear that the testimony you are about to give in the case now before the Court will be the truth, the whole truth and nothing but the truth, so help you God?

**THE WITNESS:** I do.

DIRECT EXAMINATION

BY MR. HENEK:

Q. Good morning.

A. Good morning.

Q. Please state your name for the record.
A. My name is Sonia Ortiz.
Q. Ms. Ortiz, what do you do for a living?
A. I am employed as an Intelligence Research Specialist with HCI San Juan, in Development 13.
Q. What is HSI?
A. Homeland Security Investigations.
Q. What is your title there?
A. Intelligence Research Specialist.
Q. What does an Intelligence Research Specialist do?
What are some of your duties and responsibilities?
A. We collect, analyze and disseminate law enforcement intelligence.
Q. With respect to what?
A. With respect to drug smuggling investigations, immigration law, terrorism, a wide variety of things.
Q. One of your focuses is drug trafficking or drug smuggling?
A. Yes, it is.
Q. Do you provide any other assistance to drug trafficking investigations?
A. I am the designated Caribbean Border Interagency Group Liaison Officer for HSI. What that entails is the reviewing and evaluating of ongoing maritime intelligence pertaining to drug smuggling events. I do that on a daily basis.
I determine whether or not the intelligence is

actionable, and then we coordinate for possible interdiction.

Q. You said on a daily basis you're getting information related to possible drug trafficking?

A. Possible ongoing maritime and drug smuggling events that occur during the day, after hours, weekends, evenings.

Q. You said you are the coordinator?

A. I am the designated liaison officer, which means I review the information, the intelligence, and then I determine whether or not it's actionable.

Q. So are you familiar with various drug interdictions that actually occur?

A. I am very familiar.

Q. How long have you been serving in this position?

A. Since 2013.

Q. In addition to those duties, do you assist drug investigations in any other way?

A. Yes, I provide cases to Court as well to drug smuggling investigations.

Q. Would one of those duties and responsibilities include analyzing cell phones or GPS units?

A. Yes, I provide analysis on all data contained in electronic devices.

Q. Were you involved in examining cell phones that were seized involving intervention of Defendant Johnson and Defendant de Leon-De la Rosa, on April 20, 2017?

A. Yes, I was given electronic devices for that case.
Q. Did you review the cell phone extractions in that case?
A. Yes, I did.
Q. Was one of the extractions you reviewed a Samsung phone?
A. Yes, it was.
Q. Why did you review that extraction?
A. I was told to review any pertinent information on that phone for the dates of April 20th and anything a little bit prior, anything that would be pertinent to drug smuggling or anything like that.
Q. And did you do that?
A. Yes, I did.
Q. Did you draft a report summarizing your findings?
A. Yes, I did.

**MR. HENEK:** Your Honor, may I approach?

**THE COURT:** Yes, you may.

BY MR. HENEK:
Q. Ms. Ortiz, now, showing what been marked Government ID 25 and 25A. 25A is the certified English translation.

Do you recognize those IDs?
A. Yes, yes, I do.
Q. What is that?
A. That is a report that I submitted for my analysis of the Galaxy phone.
Q. Thank you.

**MR. HENEK:** Your Honor, at this time the Government would move to admit Government ID 25 and 25A into evidence as Government's Exhibits 25 and 25A.

**MR. ZAMBRANA-AVILES:** Your Honor, we have an objection. May we approach?

**THE COURT:** Please approach.

[Sidebar conference:]

**THE COURT:** What's the objection, Mr. Zambrana?

**MR. ZAMBRANA-AVILES:** Two objections. The first one, Your Honor, I believe this witness was announced as an expert. And the report, if I'm not mistaken, contains some opinions. She hasn't been qualified yet. The report --

**THE COURT:** Do you have any objection to qualifying her?

**MR. HENEK:** Your Honor, we were going to, as a lay witness. Nonetheless, Your Honor, she is merely going to testify as to the content.

**THE COURT:** Of her report. She is not going to give an opinion. She is not qualified. You can not ask her opinion questions.

**MR. ZAMBRANA-AVILES:** The second is that I have an objection to a translation. Let's go to that page that speaks to the 1,000, okay. I believe that the interpretation, sorry, the translation is out of context, Your Honor. It talks about (Spanish language), which means, "how much is there for me."

But they are including this as a number.

**MR. RUIZ-SANTIAGO:** That's what the text says.

**MR. ZAMBRANA-AVILES:** That's the way these people write.

**THE COURT:** Well, she speaks Spanish.

**MR. ZAMBRANA-AVILES:** In any case, the process is that translation that's going into evidence.

**MR. RUIZ-SANTIAGO:** The word is mil, M-I-L in letters.

**THE COURT:** What I can note for the record, and I think everybody can agree, mil, if you know how to write it the way these gentlemen text, it could be million, me or mil, meaning one thousand. Again, you can't cross-examine the translation.

**MR. RUIZ-SANTIAGO:** Your Honor, I would have a problem with that. It would give premature of the Court that you are actually saying to the jury that it could be that this person referred to the word "mill" instead of "me." It's going to be there.

**THE COURT:** That's what I am saying. He can argue it. I'm noting it for the record that counsel is free to argue the translation depending on the context. You can argue to the Jury the translation says 1,000 but the fact that the translation says 1,000, you are free to ask, and you can ask her. She is bilingual also.

**MR. ZAMBRANA-AVILES:** Thank you, Your Honor.

(Proceedings in open court resume.)

**MR. HENEK:** Your Honor, move to publish what has been entered into evidence as Government's Exhibits 25 and 25A.

**THE COURT:** Please, go ahead.

(Received in evidence Government's Exhibit(s) 25, 25A.)

BY MR. HENEK:

Q. Ms. Ortiz, now showing you Government Exhibit Number 25; is this the report to which you were referring?

A. Yes, it is.

Q. Please tell the Jury what the contents of your report are.

A. The report contains analysis of all the messages contained in the phone.

Q. Showing pages --

A. The phone calls are outgoing phone calls. They are made.

Q. -- showing you page four of this report, is this where the text messages start?

A. Yes.

Q. I want to go ahead and walk through these text messages chronologically with you, starting from the first text that you encapsulated into your report.

Directing your attention to Section C of your report on 3/9. This first text, can you walk us through what that text says.

A. The text says (Spanish language).

Q. Where is that text from?

A. That text is coming from (829)425-4546.

**MR. HENEK:** Your Honor, can we get a translation of that text?

**THE COURT:** You have the translation. Just put it there and then she can read the translation for everybody.

BY MR. HENEK:

Q. So on 3/9/2017, the owner receives a message that says, "you bought me the thing."

The next text, can you please read that. Tell us who sent that text.

A. The owner of the phone.

Q. What did he say?

A. "Yes, I bought it but I left the truck at home."

Q. What was the date and time of that?

A. March 9, 2017.

Q. At what time?

A. At 1:46.

Q. That is UTC time. Are you familiar with UTC time?

A. Yes, I am.

Q. What time would that be approximately in Puerto Rico?

A. Four hours prior.

Q. And the next text, was that an incoming or outgoing text?

A. It's coming from (829)425-4546.

Q. The context of that text?

A. "And where are you at."

Q. That came in at what time?
A. 2:05.
Q. Again, Puerto Rico time would be four hours behind?
A. Correct.
Q. The next text, is that an outgoing or incoming text?
A. Coming from the phone owner.
Q. What did it say?
A. "I am eating."
Q. What time is that?
A. Approximately 2:05 a.m.
Q. The next text.
A. Coming from the phone owner. "Here at Gelmans," at 2:06 a.m.
Q. Turning your attention to Section D of your report, the first text in that series, was that an outgoing or incoming text?
A. A text from the phone owner.
Q. So an outgoing text?
A. Yes.
Q. What does the content of that text say?
A. "There's a man that told me he has a thing, but why."
Q. At what time was that sent?
A. 8:30 p.m.
Q. The next text, was that an incoming or outgoing text?
A. Incoming from 809.

Q. What is the name associated with that incoming text?
A. Teta.
Q. What is the contents of that text?
A. "And how much and for 1,000 tell me."
Q. What time did that text come in?
A. 8:36 p.m.
Q. The next text, that's an incoming text from the same individual, Teta?
A. Yes, individual Teta.
Q. What did he say?
A. "I'll take it."
Q. That's at 8:37 p.m.?
A. At 8:37 p.m.
Q. The next message, is that an incoming or outgoing text?
A. Outgoing from the phone owner.
Q. What did it say?
A. "How so."
Q. What time was that?
A. 8:39 p.m.
Q. The next text, incoming or outgoing text?
A. Incoming from Teta.
Q. What did Teta say?
A. "How much can you give me for 1,000," at 8:41 p.m.
Q. Next text, incoming or outgoing?
A. Outgoing from the phone owner.

Q. What did he say?

A. "Tell me how much you ask for."

Q. At what time?

A. 8:42 a.m.

Q. The next text, was that an incoming text from Teta?

A. Incoming text from Teta.

Q. What did he say?

A. I there are 70 too. Tell me.

Q. That was at 8:49 p.m.?

A. Yes.

Q. Final text in that series, outgoing text from the owner. What did the owner say?

A. "Lemy see. I'll let you know."

Q. That was at 8:50 p.m.?

A. Yes, 8:50 p.m.

Q. Turning your attention to Section A of your report, under "Text Messages". The first text is from the phone owner. What did the phone owner say?

A. "Brother, you haven't told me the price to sell there."

Q. What was the date?

A. 4/14/2017.

Q. At what time?

A. 1:15 a.m.

Q. Again, all of these times would be approximately 4 hours behind Puerto Rico?

A. Correct.
Q. The next text, is that an incoming text from an 829 number?
A. Incoming text from (829)458-4895.
Q. What does that individual say?
A. "It's 50 now. It's 50 now. It's 53 there."
Q. That was at what time?
A. At 1:19 a.m.
Q. Another incoming text on line 3; what does that 829 number say?
A. "And another thing, nine for you and the ten for me."
Q. That was at 1:22 a.m.?
A. Correct.
Q. An incoming text, line 4, from that same 829 number; what does he say?
A. "This is my pin 22B91EB0.
Q. That's at 1:24 a.m.?
A. 1:24 a.m.
Q. Two minutes later, the phone owner says what?
A. "I ask the price. They told me it is 48."
Q. Line six, with an incoming text from 829; what does he say?
A. "No it's 53 there."
Q. 829 sends another message at line seven. What does he say?

A. "Like at nine, like I said. Nine and the ten for me."

Q. That's ten minutes later?

A. Yes.

Q. What does the phone owner say in response?

A. "Okay."

Q. That's literally the same name, right?

A. Correct.

Q. What does the 829 number say in response?

A. "Go forward."

Q. And that's approximately a minute later?

A. Yes.

Q. And what did the phone owner say?

A. "That is right."

Q. All of these text messages occur on 4/17/17?

A. Yes.

Q. The final series of texts, Section B of your report occurred on 4/18/2017. The first text from an 849 number, what does it say?

A. "I'm here."

Q. What time is that at?

A. 7:00 p.m.

Q. Minus four hours, that would be approximately 3:00 p.m. in Puerto Rico?

A. Correct.

Q. The second line, what does he say again?

A. "I'm here."

Q. What does the phone owner respond at what would be 3:01 p.m. Puerto Rico time?

A. "I'll go. Stay there."

Q. And he texts that twice?

A. Correct.

Q. Then what does he say at 7:02 p.m. or 3:02 p.m. Puerto Rico time?

A. "Do not move."

Q. And he repeats that?

A. "Do not move."

Q. What else does he say, at 7:02 p.m., which would be 3:02 p.m. Puerto Rico time?

A. "Don't make calls."

Q. Does he repeat that?

A. Correct, "Don't make calls."

Q. Now, did you also examine a cell phone extraction of a SIM card associated with an ENES phone?

A. Yes, I did.

Q. Now, showing you what has been marked as Exhibit 21B, did you analyze these messages?

A. Yes, I did.

Q. Now, there has been testimony here regarding the content of these messages. One of these numbers is a 939 number. There has been testimony that that's a Puerto Rico number. Did

you look into that number?

A. Yes, I did.

Q. What were your findings with respect to that Puerto Rico telephone number?

A. That telephone number belongs to a P.O. Box in San Juan.

Q. What does your investigation reveal with respect to that P.O. Box?

A. My investigation revealed that that P.O. Box did not exist.

Q. So you looked into this phone and you learned that there was no subscriber belonging to this phone?

A. Correct.

Q. And it belonged to a P.O. Box?

A. Correct.

Q. And that P.O. Box does not actually exist?

A. Correct.

**MR. HENEK:** I have no further questions.

**THE COURT:** Cross-examination?

**MR. ZAMBRANA-AVILES:** Your Honor, we ask for a very short recess of five minutes to huddle and get some things together for cross-examination.

**THE COURT:** Let's only huddle here and take some notes. It's easier than to take the Jury out. If you need to huddle outside, it's no problem.

**MR. ZAMBRANA-AVILES:** Okay, Your Honor, we are ready.

CROSS-EXAMINATION

BY MR. ZAMBRANA-AVILES:

Q. First and foremost, you stated that you observed an extraction of a Samsung phone as part of your participation in this case, correct?

A. Right.

Q. Let me ask you something; were you able to review the entire extraction of the Samsung phone?

A. Yes, I was.

Q. Would you agree with me that that extraction was pretty large?

A. Yes.

Q. Okay, did you review it in paper form or in digital form?

A. Both.

Q. Okay, so in paper form, do you agree with me that the extraction is over 1,000 pages long?

A. Correct.

Q. And, in digital form, it is over 1,000 pages long as well, correct?

A. Yes.

Q. And out of all of that information -- strike that.

Besides text messages and call logs, there were also other types of media and data in the telephone, correct?

A. Right.

Q. Yet, you only took out about 20 to 25 messages to put into

your report, correct?

A. Yes.

Q. That is what you believe was relevant to the investigation?

A. Right.

Q. But everything else was not?

A. It did not follow the time-frame.

Q. It did not follow the time-frame you say, okay.

Now, one of the message threads introduced in your report, let's look at it, Exhibit 25 again. There we go.

So you started your testimony referring to the messages at Section C. Do you remember doing that?

A. Yes.

Q. You have some messages about -- and there is a remark here. This remark about the phone owner gave status of something that he was sent to buy, that was written by you?

A. Yes.

Q. Having said that, the phone number where the message was received from, (Spanish language) "did you buy the thing," that's 829.425.4546, correct?

A. Yes.

Q. Did you find any other messages coming from this phone number in the extraction report?

A. Yes.

Q. Okay. I'm going to show you, side by side -- I'm going to

show you, side by side, what has been marked as Exhibit 23. That is page 52 of the extraction itself. Please tell me if you see the same phone number, the 425-4546, in the table of the extraction report.

A. Yes.

Q. So it will be the same phone number?

A. Correct.

Q. Now, I am just going to leave here the extraction report. Now, I want you to look closely at the messages, and that's from number 62 all the way down. Please go over them. Read them and let me know when you're done.

A. Okay.

Q. For the benefit of the record, I'm going to put now the certified translation, which is Exhibit 23A. If you want to, please take a quick look at the messages again.

Now, the messages on this page aren't about having to buy something, right?

A. Not these messages.

Q. They appear to be an exchange of personal messages between the phone owner and this phone number?

A. Yes, these messages here appear to be.

**MR. ZAMBRANA:** I have no further questions for this witness, Your Honor.

**THE COURT:** Okay. Mr. Oppenheimer?

**MR. OPPENHEIMER:** Good morning.

CROSS-EXAMINATION

BY MR. OPPENHEIMER:

Q. You stated that the 939 telephone number had a P.O. Box that did not exist.

A. Correct.

Q. That P.O. Box, if you remember, was in zip code 00936, correct?

A. Correct.

Q. That's for the main postal office address, correct?

A. Yes.

Q. You have been to the post office, correct?

A. Yes.

Q. In the post office, there is something called "call boxes," right?

A. Yes.

Q. In your verification, did you verify, was there a call box with that number, the number that was assigned -- strike that.

In the post office, was there a call box with a number similar to the P.O. Box that the 939 had assigned?

A. My findings was that it did not exist.

Q. The P.O. Box did not exist?

A. Right.

Q. Was there a call box with that number?

A. Not to my knowledge.

Q. Are you aware that call boxes, if you do not pay for the

call box number, that it gets closed; it gets canceled, correct?

A. Yes.

Q. And you are aware that if you don't pay for that call box number, that number is not assigned to any other people; are you aware of that?

A. Yes.

Q. And for the year of 4/2017, did you verify, with the postal office, that those dates on your report a call box with that existed in the postal office station?

A. I verified if a P.O. Box existed during those dates.

**MR. OPPENHEIMER:** Thank you. No more questions.

**THE COURT:** Any very, very extremely brief redirect?

**MR. HENEK:** Very brief.

REDIRECT EXAMINATION

BY MR. HENEK:

Q. Ms. Ortiz, turning back to your extraction report, Mr. Zambrana asked you about texts with a number ending in 4546?

A. Yes.

Q. Communications A here, where there was a discussion about price and exchange of pin numbers, on 4/14/2017, were those with a number ending in 4546?

A. No, these numbers are ending in 4895.

Q. The text messages summarized in Section B of your record

Don't discuss the case with anybody. This case has moved quicker than expected. Because the witnesses have all spoken in English, it moves quickly. When we have witnesses who don't. It is translated, and then we will hear it twice.

Have a good weekend. Those of you that are fathers, happy Father's Day. I will see you all Monday.

Court is adjourned until Monday, 9:00 a.m. You are excused.

(Trial proceedings were adjourned at 4:09 p.m.)

## C E R T I F I C A T E

I, Robin Marie Dispenzieri, Registered Professional Reporter and Official Federal Reporter for the United States District Court of Puerto Rico, certify that the foregoing is a correct transcript, to the best of my ability, from the record of proceedings in the above-entitled matter.

Dated this 16th day of June, 2019.

s/s Robin Marie Dispenzieri, RPR
ROBIN MARIE DISPENZIERI, RPR
Official Court Reporter
U.S. District Court of Puerto Rico
150 Carlos Chardon Street
San Juan, PR 00918-1767
787-772-3000 (office)
305-733-5497 (mobile)